## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DISTRICT

JAMES A. KETAI,

   Plaintiff,

vs.

            Case: 21-cv-10448-AJT-APP
            HON. ARTHUR J. TARNOW
            MAG. ANTHONY P. PATTI

JAGUAR LAND ROVER NORTH AMERICA, LLC,
a Foreign Corporation, SUBURBAN OF TROY, LLC,
and ROVER MOTORS OF FARMINGTON HILLS, LLC,
d/b/a JAGUAR LANDROVER FARMINGTON HILLS
Jointly and Severally,

   Defendants.

---

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, by his attorneys, The Liblang Law Firm, P.C., pursuant to Fed. R.

Civ. P. 56, moves this Honorable Court for Summary Judgment as to Counts I, III, IV,

V and VI of his Complaint for the reasons set forth in the accompanying Brief.

Pursuant to L.R. 7.1(a), Plaintiff states that concurrence was sought and not obtained;

the attorneys for the parties conferred, pursuant to LR 7.1(a)(2)(A), on Wednesday,

September 15, 2021, but were unable to resolve the motion.

        Respectfully submitted,
        THE LIBLANG LAW FIRM, P.C.,
        BY:*/s/ Dani K. Liblang*
         DANI K. LIBLANG (P33713)
        Attorneys for Plaintiff
        346 Park Street, Suite 200
        Birmingham, MI 48009
        (248) 540-9270

DATED: September 15, 2021   Danil@lemonlawlawyers.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DISTRICT

JAMES A. KETAI,

      Plaintiff,

vs.

                             Case: 21-cv-10448-AJT-APP
                             HON. ARTHUR J. TARNOW
                             MAG. ANTHONY P. PATTI

JAGUAR LAND ROVER NORTH AMERICA, LLC,
a Foreign Corporation, SUBURBAN OF TROY, LLC,
and ROVER MOTORS OF FARMINGTON HILLS, LLC,
d/b/a JAGUAR LANDROVER FARMINGTON HILLS
Jointly and Severally,

      Defendants.

_____

## BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,
THE LIBLANG LAW FIRM, P.C.,
BY:  DANI K. LIBLANG (P33713)
Attorneys for Plaintiff
346 Park Street, Suite 200
Birmingham, MI 48009
(248) 540-9270

DATED:  September 16, 2021

## TABLE OF CONTENTS

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   9

RELIEF REQUESTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

# INDEX OF AUTHORITIES

**PAGE**

## CASES

*American Federation of State, County & Municipal Employees v City of Detroit,* 252 Mich. App. 293 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Applemann v. Farbert Motors, Inc.,* 30 Ill. App. 2d 424, 174 N.E.2d 892 (3rd Dist. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Avery v. Industry Mortgage,* 135 F. Supp. 2d 840 (W.D. Mich. 2001) . . . . . . . . . 25

*Ayer v. Ford Motor Co*., 200 Mich. App. 337 (1993) . . . . . . . . . . . . . . 1, 12-14, 22

*Beauregard-Bezou v. Pierce*, 194 Mich. App. 388 (1992) . . . . . . . . . . . . . . . . . . 9

*Book-Gilbert v. Greenleaf*, 302 Mich. App. 538 (2013) . . . . . . . . . . . . . . . . . . . 13

*Bronson Methodist Hosp v. Allstate Ins Co.*, 286 Mich. App. 219 (2009) . . . . . . 11

*Cats v Monaco RV, LLC*, No. C15-1585-JCC, 2016 WL 5253204 (WD Wash September 22, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Colonial Dodge, Inc. v. Miller*, 420 Mich. 452 (1984) . . . . . . . . . . . . . . . . . . 17, 18

*Computer Network, Inc v A.M. Gen. Corp.*, 265 Mich. App. 309 (2005) . . . . . . 18

*Davis v. Forest River, Inc.*, 485 Mich 941 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dix v. American Bankers Life Assur. Co. of Florida*, 429 Mich. 410 (1987) . . . . 23

*Game On Ventures, Inc v. Gen RV Ctr., Inc.*, 587 F. Supp. 2d 831 (E.D. Mich. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gen Motors Acceptance Corp v. Jankowitz*, 216 N.J. Super 313, 339, 523 A.2d 695 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Grosse Pointe Law Firm, PC v Jaguar Land Rover N Am, LLC*, 317 Mich App 395 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hamdan v Land Rover North America, Inc*, 51 UCC Rep Serv 2d 1024, 2003 WL 21911244 (ND Ill 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Henderson v. Chrysler Corp.*, 191 Mich. App. 337 (1991) . . . . . . . . . . . . . . . . . 20

*Johnson v. QFD, Inc.*, 292 Mich. App. 359 (2011) . . . . . . . . . . . . . . . . . . . . . 10, 13

*Jordan v. Transnational Motors, Inc.*, 212 Mich. App. 94 (1995) . . . . . . . . . 21, 23

*Kelynack v. Yamaha Motor Corp., USA*, 152 Mich. App. 105 (1986) . . . . . . . . . 18

*King v. Taylor Chrysler Plymouth*, 184 Mich. App. 204 (1990) . . . . . . . . . . . . . 20

*Krupp PM Engineering, Inc. v. Honeywell, Inc.*, 209 Mich App 104 (1995) . . . . 17

*Kure v. Chevrolet Motor Division*, 581 P.2d 603 (Wyo. 1978) . . . . . . . . . . . . . . 17

*Kwan v Mercedes-Benz,* 23 Cal.App.4th 174 (Cal App 1994) . . . . . . . . . . . . . . . 22

*M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436 (6th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Malkamaki v. Sea Ray Boats, Inc*, 411 F. Supp. 2d 737 (N.D. Ohio, 2005) . . . 2, 21

*Matsushita Elec. Inds. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586; 106 S. Ct. 1348; 89 L. Ed. 2d 538 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mayhall v. A.H. Pond Company, Inc.*, 129 Mich. App. 178 (1983) . . . . . . . . . 2, 25

*Mikos v. Chrysler Corp,* 158 Mich. App. 781 (1987) . . . . . . . . . . . . . . . . . . . . . . 24

*Muzzy v Chevrolet Division, General Motors Corp,* 153 Vt. 179, 571 A.2d 609 (Vt. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Pecor v General Motors Corporation*, 150 Vt. 23, 547 A.2d 1364 (Vt. 1988) . . 22

iii

*Rester v. Morrow*, 491 So.2d 204, 1 U.C.C. Rep. 751 (Miss. 1986). . . . . . . . . . . 19

*Royster v Toyota Motor Sales, USA, Inc*, 92 Ohio St 3d 327, 750 NE2d 531 (Ohio 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 22

*Severn v. Sperry Corp.*, 212 Mich. App. 406 (1995). . . . . . . . . . . . . . . . . . . 17, 18

*Stanton v. City of Battle Creek,* 466 Mich. 611 (2002) . . . . . . . . . . . . . . . . . 11, 13

*Temborious v. Slatkin*, 157 Mich. App. 587 (1986)  . . . . . . . . . . . . . . . . . . . . . . 24

*Temple v Fleetwood Enterprises, Inc*, 133 Fed Appx 254 (6th Cir 2005) . . . . . . . 21

*Uganski v. Little Crane & Giant Shovel, Inc*, 35 Mich. App. 88 (1971). . . . . . . . 17

*Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J. Super 441 240 A.2d 195 (N.J. Super. L. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 22

## COURT RULES

Fed. R. Civ. P. 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## STATUTES

15 U.S.C. §2301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 21

15 U.S.C. §2310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15 U.S.C.§2304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

M.C.L 440.2801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

M.C.L. 445.901. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

M.C.L. 445.902(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

M.C.L. §257.1401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

M.C.L. §257.1402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

M.C.L. §257.1403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 12

M.C.L. §257.1403(5)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

M.C.L. §257.1403(5)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

M.C.L. §257.1403(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

M.C.L. §257.1404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

M.C.L. §440.2714(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

M.C.L. §440.2804(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

M.C.L. §440.2804(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

M.C.L. §440.2967. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

M.C.L. §445.902(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

M.C.L. §445.903(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

M.C.L. §445.911(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

MCL 257.1403(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## OTHER AUTHORITIES

*A Practice Guide to New Car Warranty Cases*, 78 Mich. B.J. 288 (Dani K. Liblang 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

M Civ JI 113.04 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## INTRODUCTION

This is a breach of warranty action brought under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, *et. seq.,* Michigan's "Lemon Law," M.C.L. §257.1401, *et. seq*., the Uniform Commercial Code, Art. 2A, M.C.L 440.2801, *et. seq.,* and Michigan's Consumer Protection Act, M.C.L. 445.901, *et seq*. Although Plaintiff has alleged seven causes of action, this motion is addressed to Counts I, III, IV, V and VI. As a practical matter, the granting of Plaintiff's motion under these Counts would offer complete relief, rendering the remaining claims moot and resolving the case.

Under Michigan's lemon law, M.C.L. §257.1403, a consumer is entitled to a repurchase or replacement when a vehicle has not been successfully repaired in four attempts for the same problem (the "4 times" presumption) OR the vehicle has accumulated 30 days or parts of days out of service for repairs during the first year after delivery (the "30 day" presumption). Under the 30-day presumption, it is not necessary to prove that the repairs related to the same defect or condition. Once the vehicle crosses either the 30-day or 4 times threshold, the consumer remains entitled to relief, even if the vehicle is ultimately repaired. See, e.g., *Ayer v. Ford Motor Co*., 200 Mich. App. 337, 342 (1993).

The Magnuson-Moss Warranty Act entitles a consumer to relief if the vehicle

1

is not repaired after the warrantor or its authorized dealer have been afforded a "reasonable number of attempts" or a "reasonable opportunity" to cure. A "reasonable number of attempts" under the MMWA generally allows at least "two chances to remedy an alleged defect." *Malkamaki v. Sea Ray Boats, Inc*, 411 F. Supp. 2d 737, 743 (N.D. Ohio, 2005). Thus, where a vehicle's repair history meets Michigan's Lemon Law presumption of a reasonable number of attempts or a reasonable opportunity to cure, it is axiomatic that the consumer has also established a violation of the MMWA.

It also follows that when a consumer meets either the lemon law or the MMWA criteria, the consumer has also established a breach of express warranty and an entitlement to revocation under the Uniform Commercial Code, M.C.L. §440.2967.

Under Michigan's Consumer Protection Act, which the U.C.C. has specified applies to leases, M.C.L. §440.2804(1)(c), a consumer need only show that the product has failed to meet his or her reasonable expectations, *Mayhall v. A.H. Pond Company, Inc.*, 129 Mich. App. 178 (1983); M Civ JI 113.04, or that Defendants have failed to provide "promised benefits," *Mikos v. Chrysler Corp.*, 158 Mich. App. 781, 782–83, 404 N.W.2d 783, 784 (1987)(breach of warranty is a violation of the MCPA).

As will be demonstrated below, there is no genuine issue of material fact that

Plaintiff has established his right to relief and that summary judgment should be granted as to Counts I, III, IV, V and VI.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)." *M.J. by & through S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 446 (6th Cir. 2021). If the moving party identifies record materials showing no genuine dispute of material fact, "the nonmoving party 'must make an affirmative showing with proper evidence in order to defeat the motion." *Id*. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Inds. Co. V. Zenith Radio Corp.*, 475 U.S. 574, 586; 106 S. Ct. 1348, 1356; 89 L. Ed. 2d 538 (1986).

## STATEMENT OF FACTS

Plaintiff, James Ketai, entered into a 33-month lease of a new 2020 Range Rover, with Defendant Suburban of Troy ("Suburban" or "Dealer") for a total lease price of $63,643.96, on October 14, 2019, with payments of nearly $2,000 per month (Lease, Ex. B). The vehicle is covered by JLNRA's written express new vehicle warranty (Warranty, Ex C). Plaintiff's primary complaint is a steering/suspension issue that causes the vehicle to pull or veer to the left, requiring the driver to

3

overcompensate in order keep the vehicle in its lane. Mr. Ketai prepared two videos of the vehicle demonstrating that the issue continued to exist well after the vehicle had accumulated sufficient repair visits and days out of service to meet both the "4 times" and the "30 day" presumption under the Lemon Law (Ketai Declaration, Ex. I, Sub-Exhibits 1 and 2[1]; Repair Orders, Ex. D; Repair Chart, Ex. E). In all, the vehicle has been subject to **repair at least 11 times spanning over 76 days** in the shop, 56 of those days in the first year after delivery. Defendant JLRNA verified in its own internal documents that the "veering left" condition still existed after the lemon threshold had been met (Details for Technical Assistance: 2982723, Ex. A) but, to date, has refused to repurchase or replace the vehicle.

Within a day of delivery, Mr. Ketai noticed that the Range Rover pulled to the left and that he had to keep a constant grip on the steering wheel to keep the vehicle from veering out of its lane (Ketai Declaration, Ex. I). On October 18, 2019, a mere four days after delivery, the vehicle was back at Defendant Suburban for the pull to the left. The Dealer adjusted the rear trust angle and returned the vehicle to Plaintiff the same day (Repair Orders, Ex. D; Repair Chart, Ex. E).

On December 5, 2019, Plaintiff had the vehicle back at Suburban for the same

---

[1] These short videos have been emailed to the Court's Case Manager, Michael Lang (with opposing counsel copied), and Plaintiff is filing a motion to file the videos in the traditional manner.

pulling to the left condition (Dep of Plaintiff, Ex. F, p. 21:12). Plaintiff testified that he did not request an alignment as the repair order states, he "just told them it was pulling to the left still" (Ex. F, p.21:20). The dealer had the vehicle 9 days and performed an alignment. The alignment failed to fix the pull and Plaintiff had the vehicle back at the Suburban on December 24, 2019. At this visit, which lasted 8 days, Plaintiff also complained that the back up camera would stay on even when the vehicle was going forward and the infotainment screen blacked out sometimes. The Dealer claimed that it could not verify Plaintiff's complaint about the pull to the left, and it performed a software update for the electrical issue. Plaintiff testified that none of the issues were fixed and all three complaints were still occurring at the time of his deposition (Ex. F, pp. 23:1-25:10). In order to get the infotainment center to unfreeze, he had to wait until it was safe to put the car in park, turn it off and restart it (Ex. F, p. 25:4-10).

Next, in February of 2020, the SUV was back in for its fourth visit to Suburban because it continued to pull to the left. The repair order dated February 17, 2020, states that Suburban again performed a 4-wheel alignment. Plaintiff testified that his salesman, Joe Alcodray, told him that Suburban "wanted to change out all four tires to see if that would fix the pull" (Ex. F, p.28:17-29:15). Suburban switched out the tires, which cost $2,194.78, at either its or Jaguar's expense, but the pull to left was

not fixed (Ex. F, p. 19:7-18, 30:2-6).

At this point, the Range Rover has been back to Suburban four times, for a total of 18 days, for the pulling condition. The adjustment of the trust angle, the alignments and the new tires have all failed to fix the condition. Plaintiff sent an email to the CEO of Jaguar Land Rover detailing the problems, his dissatisfaction with the vehicle, and requested that Jaguar buy him out of his lease (Email, Ex. G). A representative from Jaguar emailed him back and asked him to take it to a different dealer for a second opinion (Ex. F, 31:8-18). On March 31, 2020, the vehicle goes to Defendant Jaguar Land Rover Farmington Hills ("Farmington"), who confirmed the "alignment is out of spec" and "found steering wheel off" and performed yet another 4-wheel alignment. This dealer also addressed the infotainment issues again with another software update. The Range Rover was at Farmington for 16 days, crossing the 30 day lemon threshold by four days. The vehicle is also a lemon at this point because after four attempted fixes, and notice to the manufacturer, the pull was verified by Farmington and Plaintiff testified that the vehicle was not fixed and "continued to pull right away" after he got it back (Ex. F, p. 32:5-9).

Unfortunately, even though the vehicle met lemon criteria, Jaguar refused to let Plaintiff out of his lease and told Plaintiff the vehicle was operating as it should. However, Plaintiff kept complaining about the pull to Suburban. On May 19, 2020,

the vehicle went back to Suburban for three days and they again performed an alignment. When the problem persisted, the vehicle went back for a seventh service visit on June 2, 2020, for the pull to the left, and the infotainment system was still malfunctioning, blacking out and slow to respond. At this June 2, 2020 visit, Suburban's technicians verified the issues and called Jaguar technical support for help in diagnosing and fixing both the pull and infotainment problems. Jaguar's own records prove that the technician at Suburban verified the pulling condition stating "ROAD TEST THE VEHICLE TO VERIFY CONCERN, VEHICLE SEEMS TO FOLLOW ROAD CROWN IF DRIVING ON THE LEFT LANE OF THE FREEWAY SEAMS TO GO LEFT" and "the vehicle veers not pull and I did experience the issue myself" (Details for Technical Assistance: 2982723, Ex A). The Dialog goes on to state "customer states the vehicle is doing this from day one he take the vehicle to another Land Rover dealer for alignment and they make it worse now he is back to us the vehicle has been aligned at least 4 times" (Ex A). When the alignment adjustments and tire swapping "did not make a difference," Plaintiff's case was escalated to engineering and at that point, Jaguar's position was the drifting was caused by the road and not the vehicle, clearly contradicting Suburban's technician's own report of a veering to the left. The infotainment system also had verified stored codes for malfunctions and the infotainment control module had to be reconfigured.

Thus, after the Range Rover had been in for attempted fixes 6 times totaling 40 days, and Jaguar was on notice of the problem, the technician at Suburban verified that the vehicle veered left, but Jaguar then decided to blame the road. Moreover, the stored codes verified that the infotainment malfunctions also continued beyond the lemon threshold. Still, Defendant Manufacturer refused to offer the refund of the lease price that is mandated by M.C.L. §257.1403(1)(b).

Meanwhile, as the vehicle's problems continued, Plaintiff kept taking his vehicle in for service. The vehicle was at the dealer an additional 4 times totaling 27 more days (Repair Orders dated October 24, 2020, September 15, 2020, December 21, 2020, and January 19, 2021, Ex. D), making this Range Rover a "double lemon" with 11 total visits and 76 total days out of service (56 in the first year). Despite Defendants' own repair records and Details for Technical Assistance proving that the vehicle crossed the "lemon" threshold under both presumptions, Defendants still made no move to comply with Plaintiff's request for a repurchase. In fact, after retaining counsel and sending out the requisite "last chance" letter on October 15, 2020, JLRNA failed to even respond and this lawsuit ensued (see, Last Chance Letter, Ex. H).

## ARGUMENT

**I. THE SUBJECT VEHICLE IS A *PRIMA FACIE* "LEMON" UNDER M.C.L. §257.1403 AND PLAINTIFF IS ENTITLED TO SUMMARY DISPOSITION AS TO COUNT V OF HIS COMPLAINT.**

### A.    INTRODUCTION: THE PERTINENT STATUTORY LANGUAGE

The manufacturer's basic obligation to repair is set forth in M.C.L. §257.1402, which states that "[i]f a new motor vehicle has any defect or condition that impairs the use or value of the new motor vehicle to the consumer or which prevents the new motor vehicle from conforming to the manufacturer's express warranty, the manufacturer or a new motor vehicle dealer of that type of motor vehicle shall repair the defect or condition as required under section 3 if the consumer initially reported the defect or condition to the manufacturer or the new motor vehicle dealer within [1 year from the date of delivery]."

Typically, defendants will argue that the defect or condition giving rise to lemon law liability must "substantially" impair the use or value of the vehicle to the consumer, even though the word "substantial" is not found in the above language. Further, the statute uses the disjunctive *"or,"* requiring the manufacturer to repair if the consumer shows *either* that the defect or condition "*impairs the use or value of the new motor vehicle to the consumer*" OR *"prevents the new motor vehicle conforming to the manufacturer's express warranty*." Unless the use of the word "or" creates an ambiguity in the statute, Courts are to apply the literal disjunctive meaning. *Beauregard-Bezou v. Pierce*, 194 Mich. App. 388, 393 (1992).

The term "substantial" does not come into play until MCL 257.1403(5), which

sets forth the two alternative ways in which a consumer may establish a presumption

that the vehicle has been subject to a "reasonable number of repairs":

> (5) It shall be **presumed** that a reasonable number of attempts have
> been undertaken to repair a defect or condition **if 1 of the following
> occurs**:
>
> (a) **The same defect or condition that *substantially impairs* the use
> or value of the new motor vehicle to the consumer has been subject
> to repair a total of 4 or more times** by the manufacturer or new motor
> vehicle dealer within 2 years of the date of the first attempt to repair the
> defect or condition, and the defect or condition continues to exist. * * *
> [or]
> (b) **The new motor vehicle is out of service because of repairs for a
> total of 30 or more days or parts of days during the term of the
> manufacturer's express warranty, or within 1 year from the date of
> delivery** to the original consumer, whichever is earlier. * * *

MCL 257.1403(5) (bold and italics added).

## B.    "SUBSTANTIAL IMPAIRMENT" IS NOT AN ELEMENT OF PROOF UNDER MCL 257.1403(5)(b), THE "30 DAY" STANDARD.

MCL 257.1403(5) states: "It shall be presumed that a reasonable number of

attempts have been undertaken to repair a defect or condition **if 1 of the following

occurs**...." *Id*. (bold added). This language means that part (b) can and should be read

without regard to part (a) and that they are independent events. Only part (a) uses the

term "substantially impairs" when talking about a repeating defect. Subsection (b)

states "out of service because of repairs," with no reference to the underlying defects

or conditions being a substantial impairment of use or value. Had the legislature

intended that part (b) also include a "substantial impairment" requirement, it could

10

have readily said so. For example, in *Johnson v. QFD, Inc.*, 292 Mich. App. 359, 370

(2011), a case brought under the Mobile Home statute, the Court explained:

> Had the Legislature wished to limit the type of violations sufficient to
> give rise to a claim under MCL 125.2331 to *significant* or *substantial*
> violations only, it surely could have done so. See *Potter v McLeary,* 484
> Mich 397, 422 n 30 (2009) (observing, albeit in an unrelated context,
> that "[i]f the Legislature wanted such a requirement it could have easily
> included it"). However, it did not. "We cannot read into a statute
> language that was not placed there by the Legislature." *Risk v Lincoln
> Charter Twp Bd of Trustees,* 279 Mich App 389, 399 (2008).

*Id*. (italics in original).

Indeed, "[i]f statutory language is unambiguous, it is generally presumed that

the Legislature intended the plainly expressed meaning, and a court must enforce the

statute as written." *Stanton v. City of Battle Creek,* 466 Mich. 611, 615 (2002). See

also *American Federation of State, County & Municipal Employees v City of Detroit,*

252 Mich. App. 293, 305 (2002), aff'd 468 Mich. 388 (2003).  "An ambiguity does

not exist simply because a court questions whether the Legislature intended the

consequence of the language at issue." *Bronson Methodist Hosp v. Allstate Ins Co.*,

286 Mich. App. 219, 229 (2009). Further, it is presumed that when the legislature

omits language from a statute, the omission is intentional. *Id*.

Moreover, "[i]t is well established that a remedial statute must be 'liberally

construe[d] ... in favor of the persons intended to be benefitted." *Johnson, supra*, 292

Mich. App. at 372.

11

**C.    ONCE THE THIRTY DAY THRESHOLD HAS BEEN MET, PLAINTIFF HAS SATISFIED THE "LEMON" PRESUMPTION AND PLAINTIFF IS NOT REQUIRED TO PROVE THAT THE DEFECT STILL EXISTS.**

Defendant will likely argue that the vehicle was ultimately repaired, barring Plaintiff from relief. This argument would be unavailing. See, *Ayer v. Ford Motor Co*, *supra*. Michigan's "lemon law" provides two alterative scenarios in which it will be "presumed that a reasonable number of attempts have been undertaken to repair." MCL 257.1403(5). Based on the language, "if 1 of the following occurs," (cited *supra*), it is clear that the legislature intended two independent situations in which a presumption would arise. That is, sub-part (b), the so-called "30 day" presumption, can and should be read without regard to subpart (a), the so-called "4 times" presumption. Only sub-part (a) contains the language "and the defect or condition continues to exist." Sub-part (b) contains no such language. Under the established rules of statutory construction, a court must presume that the omission of the "continues to exist" language from sub-part (b) was intentional:

> 'Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion.' The courts may not read into the statute a requirement that the Legislature has seen fit to omit. 'When the Legislature fails to address a concern in the statute with a specific provision, the courts cannot insert a provision simply because it would have been wise of the Legislature to do so to effect the statute's purpose.'

*Book-Gilbert v. Greenleaf*, 302 Mich. App. 538, 541-42 (2013)(internal citations omitted). Had the legislature intended that part (b) also include a requirement that any of the defects comprising the 30 days of repair continue to exist, it could have readily said so. See, e.g., *Johnson, supra*, 292 Mich. App. at 370.

"If statutory language is unambiguous, it is generally presumed that the Legislature intended the plainly expressed meaning, and a court must enforce the statute as written." *Stanton v. City of Battle Creek*, 466 Mich. 611, 615 (2002). See also, *American Federation, supra*, 252 Mich. App. at 305 ("An ambiguity does not exist simply because a court questions whether the Legislature intended the consequence of the language at issue.").

In *Ayer, supra*, the plaintiff had provided the statutory notice and thereafter delivered his vehicle to Ford's authorized dealer for engine repairs. Although Ford did replace the Mr. Ayer's engine under warranty, the repairs took more than the allotted 5 business days after delivering the vehicle to the dealer for repair. The Court of Appeals affirmed the trial court's grant of summary disposition where, as here, the vehicle was out of service for repairs for more than the 30 days allotted by M.C.L. §257.1403(5)(b).[2] Focusing on the statutory language, the Court that the presumption established by M.C.L. §257.1403(5)(b) was "unrebuttable absent the exceptions

---

[2] The undersigned was trial and appellate counsel for the Plaintiff in *Ayer*.

contained in the statute." *Id*., 200 Mich. at 342. The *Ayer* Court also rejected Ford's attempt to go beyond the statutory language to avoid the effect of the lemon law presumption:

> To allow a defendant to assert the unavailability of parts as a reason for failing to make timely repairs would defeat *the statute's intent to place the risk of inconvenience and monetary loss on the manufacturer rather than the consumer.* A statute is to be read as a whole, with the primary goal being the effectuation of the Legislature's intent.

*Ayer, supra*, 200 Mich. at 342.

The difference between the two presumptions established by M.C.L. §257.1403(5) was also discussed in *A Practice Guide to New Car Warranty Cases*, 78 Mich. B.J. 288 (Dani K. Liblang 1999).[3] Relying on the statutory language, as well as the Legislative History, Ms. Liblang explained:

> ***Practice Tip:*** *...On the basis of the language "if one of the following occurs," it is clear that the Legislature intended to establish two distinct standards. The "four times" standard (paragraph [a]) does not require that all four repair attempts occur within the first year. In fact, the additional language, "any repair performed on the same defect pursuant to subsection (4) shall be included in calculating the number of repairs under this section," requires just the opposite.*
>
> *On the other hand, the "30 days" standard (paragraph [b]) does require that all 30 days or parts of days be accumulated within the first year. However, paragraph (b) does not require a showing of "substantial impairment" or that the repair attempts involved the same defect or condition.* ***Apparently, the Legislature recognized what is obvious to most consumers--i.e., that an inordinate number of trips back and forth to the shop is, itself, a "substantial impairment" regardless of the nature of the repairs. In this regard, the legislative history explains:***

> *"The bill would define a reasonable number of attempts as either four single tries to repair a substantial defect or the keeping of the vehicle out of service because of any defect* (i.e., *not necessarily substantial) for 30 days during the shorter of the warranty period or one year from delivery. (Although the bill does not explicitly say so, its sponsors say they intend that none of the four attempts to repair a substantial defect need occur during the period of warranty; however, the* **consumer must report the defect during that time.)"**

> [House Legislative Analysis Section, House Bill 4854 (Second Analysis 10-3-85).]

*Id.*, 78 Mich. B.J. at 289 (italics in original; bold added).

In sum, the statutory language is clear and unambiguous and must be enforced as written. Nothing in the "30 days" standard requires the consumer to show a substantial impairment based on the nature of the underlying defects or conditions. Rather, the consumer need only show that the vehicle was out of service for warranty repairs for a total of 30 or more days during the first year of ownership. Under *Ayer, supra,* once the vehicle has crossed the 30-day threshold, Defendant may rebut the Plaintiff's entitlement to relief only by showing that accumulated days were due to one of the exceptions enumerated in M.C.L. §257.1403(7).

Finally, Plaintiff also meets the 4 times presumption of M.C.L. §257.1403(5)(a). It was after 4 unsuccessful repairs that JLRNA admitted in its own records that "Determined vehicle qualifies for repurchase" (Ex. A). Since this vehicle was in an additional four times (for a total of eight times) after the lemon determination was made by JLRNA in December 2018, there is no question fact that

Plaintiff meets the 4 times presumption as well and should be granted summary disposition. Moreover, like the 30 day presumption, the 4 times presumption is not rebutted by a later successful repair:

> The Lemon Law recognizes that occasionally new cars do have problems, but if those problems keep happening, or cannot be repaired in a reasonable amount of time, then the consumer did not get what he or she bargained for. R.C. 1345.73 is the "enough is enough" portion of the statute. That section makes the amount of repair activity on the vehicle define whether the vehicle is a lemon. R.C. 1345.73 is a kind of statute of limitations—it sets in well-defined terms the limit of frustration a consumer must endure.

*Royster v. Toyota Motor Sales, U.S.A., Inc*., 92 Ohio St. 3d 327, 330, 750 N.E.2d 531, 534 (2001).

## II.   BECAUSE THE VEHICLE WAS NOT REPAIRED WITHIN A REASONABLE TIME, THE "REPAIR OR REPLACE" WARRANTY HAS FAILED OF ITS ESSENTIAL PURPOSE AND PLAINTIFF IS ENTITLED TO REVOCATION UNDER THE UNIFORM COMMERCIAL CODE (COUNTS I and III).

The Lemon Law provides that its remedies are cumulative and do not supercede or limit the remedies otherwise available to consumers. M.C.L. §257.1404. Thus, the lemon law does not limit the remedies available under U.C.C., and the U.C.C., in turn, does not require a showing of a particular number of repair attempts, nor a particular number of days out of service, as a prerequisite to establishing a breach of the express or implied warranties. U.C.C. case law is replete with examples of relief being available to buyers, even where the product was subject to fewer than four repairs or fewer than 30 days in the shop, and even where the buyer continued

to use the product during the pendency of the litigation.[4] Indeed, "the generally

accepted rule [is] that an unsuccessful effort to remedy defects found to exist renders

the seller- warrantor liable; the buyer is not bound to allow him a second opportunity

or permit him to tinker with the article indefinitely in the hope that it may ultimately

be made to comply with the warranty." *Kure v. Chevrolet Motor Division*, 581 P.2d

603, 608 (Wyo. 1978). Under U.C.C. Art. 2A, Leases, one of the remedies available

to an aggrieved lessee is revocation under MCL 440.2967:[5]

> Sec. 2A517. (1) A lessee may revoke acceptance of [a vehicle] whose nonconformity substantially impairs its value to the lessee if the lessee has accepted it:
>
> * * *
>
> (b) Without discovery of the nonconformity if the lessee's acceptance was reasonably induced either by the lessor's assurances or...by the difficulty of discovery before acceptance.

"A 'nonconformity' is a failure of good sold to conform to the legitimate

expectations of the contract." *Game On Ventures, Inc v. Gen RV Ctr., Inc.*, 587 F.

Supp. 2d 831, 839 (E.D. Mich. 2008). "The test for substantial impairment has been

expressed as whether 'the nonconformity has a devaluing effect on [the buyer] and

that the buyer's assessment is factually correct." *Id*., citing *Colonial Dodge, Inc. v.

Miller*, 420 Mich. 452, 458 (1984).

---

[4] See, e.g., *Severn v. Sperry Corp.*, 212 Mich. App. 406, 413-414 (1995); *Krupp PM Engineering, Inc. v. Honeywell, Inc.*, 209 Mich App 104, 109 (1995); *Uganski v. Little Crane & Giant Shovel, Inc*, 35 Mich. App. 88 (1971).

[5] The UCC Article 2 counter-part is MCL 440.2608.

17

Under the U.C.C., the nonconformity need not render the product completely useless. See, e.g., *Severn, supra*, 212 Mich App at 414 ("Although the grinder still mixed and ground, the uniformity of the mixing and grinding was key to the value of the grinder. Under these circumstances, we believe the there was sufficient evidence to conclude that defendant's limited written warranty failed of its essential purpose."). See, also, *Colonial Dodge, supra* (lack of spare tire sufficient non-conformity to justify revocation).

Further, the Courts have recognized that an ordinate number of repairs or days out of service constitutes a sufficient "nonconformity" to justify revocation. See, e.g., *Computer Network, Inc. v A.M. Gen. Corp.*, 265 Mich. App. 309, 317 (2005)("seventeen repair visits needed within such a short time is circumstantial evidence that the vehicle was defective and not reasonably fit for its intended use when it left the possession of defendant AM General"); *Kelynack v. Yamaha Motor Corp., USA*, 152 Mich. App. 105, 112-113 (1986)(three month delay in completing repairs justified revocation).

Courts have also recognized that the cumulative effect of otherwise minor defects is sufficient to justify revocation where a vehicle is out of service for an inordinate number of days or visits. See, e.g., *Gen Motors Acceptance Corp v. Jankowitz*, 216 N.J. Super 313, 339, 523 A.2d 695, 708 (1987):

An unreasonable length of time to repair defects may also have the effect of impairing usefulness of the product for a substantial length of time; **defects which might otherwise be deemed minor may thus have a substantial impact upon the buyer**. *E.g. Jorgensen v. Pressnall,* 274 *Or.* 285, 270, 291, 545 *P.*2d 1382, 1385 (1976), where one of the factors upon which the court based its conclusion that there had been a substantial impairment in the value of a mobile home was the failure of the seller to repair the defects, which were relatively inexpensive, in a timely manner. This failure, the court held, caused the purchaser to be deprived of the benefits and comforts of the mobile home for a substantial period of time.

Given that our Legislature has deemed an accumulation of 30 days out of service during the first year after delivery sufficient to justify relief under the Lemon Law, it would be incongruous to hold that an accumulation of *56 days* in that period is not sufficiently "substantial" so as to justify revocation. Having leased a new vehicle, Plaintiff was "entitled to expect an automobile new in every respect and part, properly constructed and regulated to provide reasonably safe, trouble-free, and dependable transportation." *Applemann v. Farbert Motors, Inc.,* 30 Ill. App. 2d 424, 174 N.E.2d 892 (3rd Dist. 1961)."For a majority of people the purchase of a new car is a major investment, rationalized by the peace of mind that flows from its dependability and safety." *Zabriskie Chevrolet, Inc. v. Smith,* 99 N.J. Super 441, 458, 240 A.2d 195, 205 (N.J. Super. L. 1968). As one court succinctly put it:

> There comes a time when enough is enough – when an automobile purchaser, after having to take his car into the shop for repairs an inordinate number of times, and experiencing all of the attendant inconvenience, is entitled to say, 'That's all,' and revoke, notwithstanding the seller's repeated good faith efforts to fix the car.

*Rester v. Morrow*, 491 So.2d 204, 1 U.C.C. Rep. 751, 759 (Miss. 1986).

It should also be noted that neither Plaintiff's continued possession nor use of the vehicle are defenses to revocation. See, e.g., *Henderson v. Chrysler Corp.*, 191 Mich. App. 337, 340-41 (1991)(the buyer may continue to use the goods in order to mitigate damages); and *King v. Taylor Chrysler Plymouth*, 184 Mich. App. 204, 211 (1990)(plaintiff not required to tender vehicle; plaintiff need only hold the vehicle for a reasonable time to allow defendant to retrieve it).

Finally, it is expected that JLRNA will argue that revocation is not available against a remote manufacturer, citing *Henderson, supra*. That aspect of *Henderson* has essentially been superceded by *Davis v. Forest River, Inc.*, 485 Mich 941 (2009). There, the Court reiterated that the intent of UCC remedies is to allow the wronged buyer to be made whole. Thus, the Court concluded under M.C.L. §440.2714(2), where the usual "difference in value" damages would not suffice, "the plaintiff should be allowed to relinquish title." *Id*., 485 Mich. at 328. The Court then went on to find that the trial court's judgment allowing revocation against the manufacturer was consistent with the damages allowable under M.C.L. §440.2714(2), holding that "[t]hese damages include the purchase price of the vehicle less the sum paid to the plaintiff pursuant to case evaluation, and repayment of interest paid on the loan and statutory interest pursuant to MCL 600.6013(8), to the extent that such awards of

interest are not duplicative." *Id*.[6]

Plaintiff, having established that the express warranty has failed of its essential purpose should be granted summary disposition with respect to Count I and III of his Complaint.

## III. PLAINTIFF IS ENTITLED TO RELIEF UNDER THE MAGNUSON-MOSS WARRANTY ACT AS A MATTER OF LAW (COUNT IV).

It is universally recognized that the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et. seq.,* is remedial in nature and "must be liberally construed to effectuate [its] intended goals." *Jordan v. Transnational Motors, Inc.*, 212 Mich. App. 94, 98 (1995). Pursuant to this statute, "enough is enough" after a warrantor has been afforded a "reasonable number of attempts" and/or a "reasonable opportunity" to cure a defect. 15 U.S.C. §§2304, 2310. The phrase "reasonable attempts" encompasses the entire product, not just each discrete defect or condition, and is generally limited to two attempts.[7] Here, there were eleven repair attempts overall including both the

---

[6] See, also, *Hamdan v Land Rover North America, Inc*, 51 UCC Rep Serv 2d 1024, 2003 WL 21911244 (ND Ill 2003), holding that revocation against the manufacturer-warrantor is an equitable remedy available under the federal Magnuson-Moss Warranty Act, regardless of state law privity rules.

[7] *Malkamaki, supra*, 411 F. Supp 2d at 743; *Grosse Pointe Law Firm, PC v Jaguar Land Rover N Am, LLC*, 317 Mich App 395 (2016), citing *Larry J Soldinger Assoc, Ltd v Aston Martin Lagonda of No Amer, Inc*, 1999 WL 75617, *3 (ND Ill Sept 13, 1999); *Traynor v Winnebago Indus, Inc*, No. CV032082PHZ-DGC, 2004 WL 1146077, *1 (D Ariz May 19, 2004); *Cats v Monaco RV, LLC*, No. C15-1585-JCC, 2016 WL 5253204, *5 (WD Wash September 22, 2016); *Temple v Fleetwood Enterprises, Inc*, 133 Fed Appx 254, 368 (6th Cir 2005)("in determining whether or

pulling condition and the infotainment malfunctions; hence reasonable minds could not differ that Defendants have had a "reasonable opportunity" to repair.

Furthermore, the majority of courts have held that the reasonable number of attempts/reasonable opportunity standard is akin to strict liability; i.e., once this threshold has been met, the continued existence of a defect is irrelevant.[8]

The rationale behind these basic principles is clear: "once a person's faith is shaken in a vehicle, the vehicle loses not only its real value in their eyes, but becomes an instrument whose integrity is substantially impaired and whose operation is fraught with apprehension." *Zabriskie, supra*, 99 NJ Super at 458, 240 A2d at 205.

Given the multiple repair attempts requiring extended days in the shop, Plaintiff should be granted summary disposition with respect to his claim under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et seq.* (Count IV).

## IV.    THE UNDISPUTED FACTS OF THIS CASE ESTABLISH THAT DEFENDANTS HAVE VIOLATED THE MICHIGAN CONSUMER PROTECTION ACT AS A MATTER OF LAW(COUNT VI).

The MCPA was enacted to prohibit unfair or deceptive practices in trade or

---

not a seller is given a reasonable amount of time or a reasonable number of attempts to cure a defect, the Magnuson-Moss Act contemplates that a seller will be given at least two chances to remedy an alleged defect.").

[8]   *Ayer v Ford, supra*, *Muzzy v Chevrolet Division, General Motors Corp,* 153 Vt. 179, 571 A.2d 609 (Vt. 1989); *Pecor v General Motors Corporation*, 150 Vt. 23, 547 A.2d 1364 (Vt. 1988); *Royster v Toyota Motor Sales, USA, Inc*, 92 Ohio St 3d 327, 750 NE2d 531 (Ohio 2001); *Kwan v Mercedes-Benz,* 23 Cal.App.4th 174, 184 (Cal App 1994).

commerce and to "provide an enlarged remedy for consumers who are mulcted by deceptive business practices." *Dix v. American Bankers Life Assur. Co. of Florida*, 429 Mich. 410, 417 (1987). As a remedial statute, it must be read liberally in favor of the persons intended to be benefitted, to effectuate its purposes. *Jordan v. Transnational Motors, Inc*, 212 Mich App 94, 98 (1995).

While Defendants typically argue that vehicle manufacturers and dealers are "highly regulated" and therefore exempt from the MCPA, there are no published cases supporting this proposition. Moreover, by statute, U.C.C. leases are subject to the MCPA. M.C.L. §440.2804(1) provides that "[a] lease, although subject to this article, is also subject to all of the following * * * [t]he Michigan consumer protection act, Act NO. 331 of the Public Acts of 1976, being sections 445.901 to 445.922 of the Michigan Compiled Laws."

There are four elements to be proved in an MCPA action: (1) Defendants are engaged in trade or commerce; (2) Plaintiff is a "person"; (3) while engaged in trade or commerce, Defendants engaged in one or more of the prohibited acts set forth in Section 3 of the Act; and (4) as a result of Defendants' violation, Plaintiff has suffered a loss within the meaning of the Act.

Here, the first two elements are established. M.C.L. §445.902(c) defines a "person" as including "a natural person." Plaintiff is clearly a "person" under this

23

definition. M.C.L. 445.902(d) defines "trade or commerce" as "the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes...." Defendants are in the business of providing goods and services primarily for personal, family or household purposes. Thus, Defendants meet the Act's definition of engaging in "trade or commerce."

With respect to the third element, the prohibited practices are defined in M.C.L. §445.903(1). Plaintiff is not required to prove that Defendants acted wilfully, intentionally or maliciously; rather Plaintiff need only prove that the acts, methods or practices occurred. *Temborious v. Slatkin*, 157 Mich. App. 587, 603 (1986) (plaintiff need not prove defendant's conduct was wilful).

Among the prohibited acts is ***"failing to provide promised benefits,"*** which includes benefits promised by operation of law. M.C.L. §445.903(y). See, e.g., *Mikos v. Chrysler Corp*, 158 Mich. App. 781 (1987) (breach of implied warranty is a "failure to provide promised benefits" within meaning of Consumer Protection Act). Thus, there is no genuine issue of material fact as to the third element that must be proved.

With respect to the fourth and final element, a "loss" resulting from Defendants' violations, the Act provides that such "loss" may be either money damages or non-money damages, such as frustration of legitimate expectations.

24

M.C.L. §445.911(2); *Mayhall, supra,* 129 Mich. App. at186-187(frustration of plaintiff's expectations by receipt of goods of lesser quality than represented or guaranteed constitutes a "loss" under the MCPA, regardless of any out-of-pocket damages); *Avery v. Industry Mortgage,* 135 F. Supp. 2d 840 (W.D. Mich. 2001) (denying defendant's motion to limit non-economic damages under MCPA). Based on the foregoing, Plaintiff should be granted summary disposition as to Count VII of his Complaint.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests this Honorable Court grant Plaintiff's Motion for Summary Disposition against Defendant Manufacturer on his claims for Breach of Express Warranty, Revocation, Violation of the Magnuson-Moss Warranty Act, The Michigan Consumer Protection Act and Michigan's Lemon Law (Counts I, III, IV, VI and V, respectively), which would afford Plaintiff complete relief, thereby disposing of the entire action.

> Respectfully submitted,
> THE LIBLANG LAW FIRM, P.C.,
> BY:*/s/ Dani K. Liblang*
>   DANI K. LIBLANG (P33713)
> Attorneys for Plaintiff
> 346 Park Street, Suite 200
> Birmingham, MI 48009
> (248) 540-9270

DATED: September 15, 2021   Danil@lemonlawlawyers.com